## The Manufacturers' Exhibition Building Company v. Joseph I. Landay.

### Gen. No. 11,762.

1. BY-LAWS—*power of stock-holders to adopt and repeal.* The statute which empowers directors to adopt by-laws does not divest the stock-holders of their inherent power to adopt and repeal the same.

2. BY-LAWS—*power of corporation to prescribe manner of amending.* A corporation cannot divest itself of the power to alter or amend its by-laws, but it can prescribe and fix the manner in which such by-laws should be amended and if the mode prescribed is reasonable, that mode must be followed.

3. BY-LAW—*when manner of amending, legal.* A by-law which provides that the by-laws adopted may be altered or amended by a majority vote of the stock-holders, or by a two-thirds vote of all of the directors, is valid.

Bill to set aside by-law, etc. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1904. Affirmed. Opinion filed June 2, 1905.

**Statement by the Court.** Appellant corporation was organized in March, 1901, with a capital of $6,000 in 120 shares of $50 each. The stock was all subscribed by Joseph S. Meyer, Abram L. Sheppard and James A. Pugh, and at the first stockholders' meeting held March 11, 1901, they were chosen directors. At a meeting the directors held on the same day they adopted by-laws. Section 1 of Article 16 of the by-laws so adopted is as follows:

"These by-laws may be altered or amended at any meeting of the stockholders by a majority vote of the stock represented at such meeting, or by a two-thirds majority vote of the whole number of the board of directors at any regular meeting. Such action of the board of directors to be ratified and confirmed at the first meeting of the stockholders thereafter."

No money was paid by any of said subscribers for his stock, but the board of directors, composed of the three subscribers, by resolution declared the stock paid up by the services of the subscribers. At the first meeting of the directors,

Meyer was chosen president, Sheppard vice-president and treasurer, and Pugh secretary, and the salary of each was fixed at $3,000 per year. Sheppard sold his stock to the other subscribers and resigned his office in the corporation in June, 1901, and soon after the number of directors was increased to four, and the salary of the vice-president abolished. September 25, 1902, the stock of the corporation was held as follows: Joseph S. Meyer, 59 shares; Gussie W. Meyer, his wife, one share; James A. Pugh, 59 shares; Nellie Pugh, one share, and said four stockholders were the directors of the corporation. Joseph S. Meyer was president, Nellie Pugh vice-president, James A. Pugh secretary and treasurer.

Trouble arose between Meyer and Pugh, and September 25, 1902, the Pughs sold and transferred their 60 shares of stock in the corporation to appellee. Joseph S. Meyer took part in the negotiations for the sale of said shares of stock by Pugh to appellee, and before the agreement to purchase the same was made, agreed verbally with appellee that if he would buy said shares he should be made vice-president with a salary of $250 per month up to January 1, 1903, and $125 per month thereafter. James A. Pugh at once resigned his offices of secretary, treasurer and director, and Nellie Pugh her offices of vice-president and director. September 27, 1902, a special meeting of the stockholders of the corporation was held. The stock then stood on the books as follows: Joseph S. Meyer, 58 shares, Charles G. White and Gussie W. Meyer each one share, and appellee 60 shares. Appellee and White were elected to fill the vacancies in the board of directors. The stipulation of facts states:

"That at said meeting the following amendments to the by-laws were adopted: Article 17. First. The salary of the president of this corporation shall be three thousand ($3,000) dollars per annum, payable in equal monthly installments. Second. That the salary of the vice-president of this corporation shall be as follows: For the months of October, November and December, 1902, and January, 1903, at the rate of Two hundred and Fifty ($250) dollars per

month, and thereafter his salary shall be fifteen hundred ($1,500) dollars per annum, payable in equal monthly installments. Third. No officer of said company other than those specified in sections one and two of this article shall be entitled to any compensation for services as an officer, and no salary in excess of the amounts therein specified."

February 9, 1903, the directors by vote of three in the affirmative against the negative vote of appellee adopted a resolution that the section of the by-law providing for a salary of the vice-president be repealed.

March 9, 1903, appellee was re-elected vice-president of the corporation and has since held that office and discharged its duties. Appellant refused to pay appellee his salary after March 9, 1903, and appellee declined to accept the salary offered from March 1 to March 9, and brought suit for his salary for the months of March and April and recovered judgment for $250, from which judgment this appeal is prosecuted.

A. W. BRICKWOOD, for appellant.

No appearance for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The real controversy in this case is between Joseph S. Meyer and appellee. September 25, 1902, Joseph S. Meyer and Gussie W. Meyer were two of the four directors of appellant and James A. and Nellie Pugh the other two. The Meyers held one-half of the capital stock, the Pughs the other half. Trouble arose between Meyer and Pugh, and Meyer suggested to appellee that he purchase of the Pughs the one-half of the capital stock held by them, and to induce him to make such purchase agreed with him that if he would do so he should be elected to an office in the corporation with a salary of $1,500 per year. Appellee then purchased the stock of the Pughs and they resigned as officers and directors of appellant. This resignation left but two directors in the board of four. Possibly for the reason that

the directors could take no action until the vacancies in the board were filled, and the stockholders could not fill such vacancies or take any action without the consent of both the Meyer party and appellant, the proceedings at the first meeting of the new stockholders, held September 27, 1902, were harmonious. Meyer transferred to White, an employe of appellant, one share of his stock, and White and appellee were elected directors. The four stockholders, who were also the four directors, at the same meeting unanimously adopted an amendment to the by-laws whereby the salary of the president was made $3,000 per year and the salary of the vice-president $250 per month up to January, 1903, and $1,500 per year payable in equal monthly installments thereafter. The same persons who composed the stockholders' meeting, on the same day met as directors and elected appellee vice-president. After September 27, 1902, while appellee as the holder of one-half of the capital stock could prevent any action hostile to his interests by the stockholders of the corporation, he had but one vote in a board of four directors. The only protection he had against a repudiation by Joseph S. Meyer of his agreement with appellee was the by-law adopted at the first meeting of the directors of the corporation, which provided in effect that the by-laws of the corporation should not be altered or amended by the directors unless such action was ratified and confirmed by the stockholders at the first meeting of the stockholders held thereafter.

February 9, 1903, the directors by the votes of Joseph S. Meyer, Gussie W. Meyer, his wife, and White adopted a resolution that Article 17 of the by-laws adopted by the stockholders September 27, 1902, be amended by striking out the section which provided for the salary of the vice-president. This action of the directors was not ratified by the stockholders.

The contention of appellant is that the power to make by-laws is by the statute given to the directors; that the stockholders have no such power, and that therefore the by-law of March 11, 1901, is illegal and void and the resolution of

the board 'of directors of February 9, 1903, amending the by-laws was operative without any ratification by the stockholders. The second contention of appellant is that the by-law of September 27, 1902, providing for a salary for the vice-president "was void because made pursuant to a bargain with the majority stockholders and directors, and the vote and influence of appellee as owner of one-half of the capital stock.'

It is to be noticed that the same by-law which provided for a salary of $1,500 per year for the vice-president provided for a salary of $3,000 per year for the president, and that that by-law was adopted, not by the directors, but by stockholders and was adopted at the same meeting at which by the vote of appellee, the holder of one-half of the stock, White and appellee were elected to fill the vacancies on the board of directors caused by the resignation of the Pughs when the other two directors were Joseph S. Meyer and Gussie W. Meyer, his wife.

Appellant while in law a corporation, is really little more than a partnership with limited liability: first between Meyer, Sheppard and Pugh, then between Meyer and Pugh, and after September 25, 1902, between Meyer and appellee, each owning one-half of the capital stock of the corporation. The corporation is prosperous. It has paid one dividend of forty per cent. Meyer testified that his half of the capital stock of the par value of $3,000 was worth $10,000, and that appellee's half of the stock was worth the same amount. Although they did not pay a dollar for their stock, the corporation paid at first to each of its three stockholders, who were also its officers and directors, a salary of $3,000 per year and Meyer and Pugh were each paid their salary up to the time that Pugh sold his stock to appellee.

The agreement between Meyer and appellee was an agreement by Meyer, the owner of a half interest in appellant corporation, with appellee to induce appellee to buy of Pugh the other half interest in the corporation. It was only natural that the election of directors and officers and the salaries of the latter should be a matter of discussion and agreement

between Meyer and appellee before such purchase was made. If appellee bought Pugh's stock and the Pughs resigned as officers and directors, Meyer and appellee must agree upon the persons to be elected directors or no director could be elected. Nellie Pugh was vice-president and James A. Pugh secretary and treasurer, with a salary of $3,000 per year. It was important for appellee in determining whether he should buy Pugh's stock, to come to an understanding and agreement with Meyer, not only as to the persons to be chosen directors to fill the vacancies which would be caused by the resignation of the Pughs, but as well as to the persons to be chosen by the directors to fill the offices held by the Pughs and their salaries. Appellee might naturally hesitate to buy the stock and procure the resignation of the Pughs as directors and officers under an agreement with Meyer that appellee should be elected director, unless he and Meyer could agree in advance as to the person to be elected to fill the offices held by the Pughs and as to the salaries to be paid such new officers, for the other then directors could over appellee's head elect White and Mrs. Meyer to the offices held by the Pughs and the one selected to fill the office held by James A. Pugh would under the by-laws then in force be entitled to a salary of $3,000 per year.

"The power of making by-laws is always said to be one of the essential incidents and rights of the corporation. This power exists at common law." Cook on Corporations, Sec. 4-a, p. 15.

Thompson on Corporations IV, sec. 5,314, says: "The body of stockholders in every business corporation are the persons who are incorporated. They are, in a substantial sense, the corporation. They are the ultimate constituency and the directors who are elected by them from their own number are their officers. The ideal body is, in theory of law, the principal, and the board of directors are the managing agents."

Our statute provides that the directors or managers of a corporation "may adopt by-laws for the government of the officers and affairs of the company." But this statute does

not divest the stockholders of the inherent power to adopt and repeal by-laws. Lovell v. Westwood, 2 Dow & Clark, 21.

The corporation could not divest itself of the power to alter or amend its by-laws, but it could prescribe and fix the manner in which the by-laws should be amended, and if the mode prescribed is reasonable, that mode must be followed. Thibert. v. Supreme Lodge, 81 N. W., 223; Mutual Aid Society v. Monti, 59 N. J. Law, 341; Mutual Fire, etc., v. Farquhar, 86 Md., 671.

The directors of this corporation adopted a by-law which provided that a by-law might be altered or amended by a majority vote of the stockholders or by a two-thirds vote of all of the directors, provided such action of the directors be ratified or confirmed by the stockholders at their next meeting. The effect of this by-law was to divest the directors of the power to alter or amend a by-law without the consent of a majority of the stockholders. In this by-law we see nothing unlawful or unreasonable. It has never been repealed. It was in force when appellee purchased one-half of the stock of the corporation, and entered into and became a part of the contract between the corporation and the stockholders. The limitation of the powers of the directors to alter or amend the by-laws without the consent of the majority of the stockholders was a great safeguard to appellee, the holder of one-half of the stock, against hostile action by the directors, taken under pretense that the same was for the interest of the corporation, but in fact taken for the interest and profit of the owner of the other half of the stock. There is in this corporation no minority stockholder to complain of the agreement between Joseph S. Meyer and appellee. It is only Meyer who is benefited and appellee who is injured by Meyer's repudiation of his agreement, and only Meyer who would suffer and appellee who would profit by the keeping of that agreement. No consideration of public policy or regard for the interest of others required Meyer to repudiate his agreement. On the contrary the motives of common honesty, every motive which can influence a man to keep his word and deal fairly, required him to keep that agreement.

The by-law adopted by the stockholders September 27, 1902, providing for a salary of $125 per month for the vice-president, has not been repealed in the manner prescribed by the by-laws of the corporation and must therefore be held to remain in force and appellee held entitled to the salary by that by-law provided for the office which he held.

The judgment of the Superior Court will be affirmed.

*Affirmed.*